UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN HEBRON,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN BALDWIN, et al.<br><br>    Defendant. | Case No. 17-cv-6254<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Steven Hebron, a former inmate at Stateville Correctional Center, filed his Second Amended Complaint (SAC) on July 27, 2018 against Illinois Department of Corrections (IDOC) administrators/staff John Baldwin, Randy Pfister, Kevin Frain, and Jermiagh Daly (collectively IDOC Defendants) and Wexford Health Sources, Inc., Ghaliah Obaisi as Independent Executor of the Estate of Dr. Saleh Obaisi, and Dr. Evariston Aguinaldo, Jr. (collectively "Wexford Defendants") under 42 U.S.C. § 1983. [57]. Plaintiff alleges that IDOC Defendants subjected him to unconstitutional conditions of confinement in Stateville's "F House," *id.* ¶¶ 1–17, and that Wexford Defendants denied him appropriate medical care out of deliberate indifference for his medical needs, *id.* ¶¶ 22–41.

At Plaintiff's request, [49], this Court held a Pavey hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), which requires this Court to resolve issues of material fact as to whether a prisoner exhausted his administrative remedies prior to pretrial discovery. [88]. This Court held the hearing over the course

1

of two days to resolve whether Plaintiff exhausted his administrative remedies with respect to his unconstitutional conditions of confinement and deliberate indifference claims.[1] The parties also submitted briefing on these issues following the hearing. [130] [131] [132]. For the following reasons, this Court finds that Plaintiff's various grievances exhausted, in part, his unconstitutional conditions of confinement and deliberate indifference claims. [2]

## II. Legal Standard

### A. PLRA Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) requires inmates to exhaust all available administrative remedies before filing a lawsuit in federal court. 42 U.S.C. § 1997e(a). To exhaust administrative remedies, an inmate "must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). The Seventh Circuit takes "a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner who does not properly exhaust is foreclosed from litigating in federal court. *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). Defendants have the burden of proving, by a preponderance of the evidence, that Plaintiff failed to exhaust administrative remedies. *Jones v. Dart*, No. 14 C 1929, 2016 WL 1555588, at *2 (N.D. Ill. Apr. 18, 2016).

---

[1] This Court heard testimony on March 20, 2019 and closing arguments on April 18, 2019.

[2] The SAC also alleges an Illinois state-law intentional infliction of emotional distress claim, [57] ¶¶ 18−21, to which *Pavey's* exhaustion requirement does not apply. *See Pavey*, 544 F.3d at 740 (citing 42 U.S.C. § 1997e(a)).

2

### B. Illinois Prison Grievance Procedures

Under the Illinois Administrative Code, which provides the grievance process for IDOC, an inmate must first submit a grievance to his counselor. 20 Ill. Admin. Code § 504.810(a); *Dole*, 438 F.3d at 807. If the inmate is not satisfied with the counselor's resolution, he must then file a formal grievance with his grievance officer. *Id*. A grievance must be filed with the counselor or grievance officer within 60 days after the discovery of the incident that gives rise to the grievance. 20 Ill. Admin. Code § 504.810(a). The grievance officer shall consider the grievance and report his findings and recommendations in writing to the Chief Administrative Officer (the Warden). *Id*. § 504.830(e). The Warden shall review the findings and recommendation and advise the offender of the decision in writing. *Id*. If, after the Warden responds, the inmate still believes that the grievance has not been resolved to his satisfaction, he may appeal in writing to the IDOC Director. *Id*. § 504.850(a). The Administrative Review Board (ARB), appointed by the Director, must receive the appeal within 30 days after the date of the Warden's decision. *Id*. The ARB shall then submit a written report of its findings and recommendations to the Director, who shall review them and make a final determination of the grievance. *Id*. at § 504.850(d)−(e). An inmate does not exhaust his administrative remedies until the ARB rules upon his appeal. *See id*. § 504.850; *Dole,* 438 F.3d at 806–07.

Alternatively, an inmate may request that a grievance be handled as an emergency by forwarding it directly to the Warden. 20 Ill. Admin. Code § 504.840. If the Warden determines that a substantial risk of imminent personal injury or other

serious or irreparable harm exists, the grievance process must be expedited, and the inmate should be notified about what action will be or has been taken. *Id.* § 504.840(a)–(b). If, after receiving the Warden's substantive response, the inmate still believes the problem has not been resolved to his satisfaction, he may appeal in writing to the Administrative Review Board (ARB) within 30 days after the date of the Warden's decision. *Id.* § 504.850(a). If an inmate receives a determination from the Warden that the grievance does not present an emergency, then he is not required to appeal that decision to the ARB. *Bentz v. Ghosh*, 718 F. App'x 413, 418 (7th Cir. 2017) (finding that an inmate exhausted his administrative remedies where he filed suit after the Warden had rejected his emergency grievance, because under "these circumstances Illinois rules do not require him to appeal that decision to the [ARB].").

## II. Analysis

At the Pavey hearing, the parties presented evidence about four grievances relating to Plaintiff's unconstitutional conditions of confinement and deliberate indifference claims. Those grievances, which this Court admitted into evidence at the hearing, are dated: August 6, 2016 (P. Ex. A1 at 1); September 2, 2016 (D. Ex. 6); September 16, 2016 (D. Ex. 5 at 5−6); and October 7, 2016 (D. Ex. 4). This Court considers each grievance in turn.

### A. August 6, 2016 Grievance

Plaintiff's August 6, 2016 grievance discusses broken workout equipment and a related injury that occurred on August 5, 2016. (P. Ex. A1 at 1). This grievance concerns only Plaintiff's unconstitutional conditions of confinement claim, and thus

4

does not implicate the Wexford Defendants.

Plaintiff's grievance reflects that he sent it to his counselor on August 6, 2016—one day following the incident. *Id.* Plaintiff testified that several months later, on March 6, 2017, he sent a letter to the ARB following up on this grievance; the letter, admitted into evidence, states that he filed the grievance with his grievance officer but never received a response. (D. Ex. 5 at 8). The ARB appears to have considered the letter as a grievance and denied it for failing to: (1) include a facility grievance number (which inmates receive in a grievance officer's response); and (2) "send the grievance to the ARB within the 60-day time period as required." *Id.* at 7, 12. IDOC Defendants contend that "Plaintiff failed to properly grieve the issues . . . for the reasons stated in each of the ARB's responses." [131] at 5. This Court disagrees.

Here, Plaintiff's letter states that he never received a grievance officer response. (D. Ex. 5 at 8). Thus, he had no proper forum through which to properly exhaust his grievance. *See, e.g., Moore v. Feinerman*, 515 Fed. Appx. 596, 598 (7th Cir. 2013) ("We take a strict compliance approach to exhaustion, but an inmate needs to exhaust only *available* administrative remedies. If [Plaintiff] is correct that the prison failed to respond to his grievances, an appeal to the Board was an unavailable remedy and need not have been exhausted.") (citing *Dole*, 438 F.3d at 809) (internal citations omitted). And Plaintiff *did* attempt to follow up with the ARB, despite not receiving a response. (D. Ex. 5, at 8, 13). In fact, at the parties' hearing, the IDOC Defendants used this follow-up letter to suggest that Plaintiff did not exhaust his October 7, 2016 grievance (as discussed below), because he failed to send a follow-up

5

letter to the ARB in that instance despite clearly knowing how to do so.

IDOC Defendants provided no evidence rebutting Plaintiff's testimony that he received no response. Thus, they cannot rely upon the ARB's conclusory response regarding the facility grievance number; how would Plaintiff have included a grievance officer response or facility grievance number without the officer's response? The law does not require the impossible.

Similarly, IDOC Defendants cannot rely upon any failure to comply with the 60-day time period. First, both IDOC Defendants and the ARB recite the regulations incorrectly; under the Illinois Administrative Code, an inmate must file a grievance with a *grievance officer or counselor* within 60 days after the discovery of the incident. 20 Ill. Admin. Code § 504.810(a). This specific provision says nothing about when the ARB must receive the appeal. *Id*. Rather, the regulations state that the ARB must receive an appeal within 30 days *after* the Warden's review of the grievance officer's decision. *Id*. at § 504.850(a).

In short, absent any conflicting testimony or other evidence presented by the IDOC Defendants, and given Plaintiff's testimony and letter to the ARB, which this Court finds credible on this issue, this Court finds that Plaintiff has exhausted his unconstitutional conditions of confinement claim, to the extent it involves allegations related to the August 6, 2016 grievance. *Cf. Moore*, 515 Fed. Appx. at 598 (affirming district court's failure to exhaust finding where Plaintiff asserted that he received no response to his grievances, but the court found this assertion not credible due to conflicting hearing testimony).

### B. September 2, 2016 Grievance

Plaintiff's September 2, 2016 grievance, filed as an emergency grievance, relates to the allegedly unsanitary conditions in Stateville's F House and thus only concerns the IDOC Defendants. (D. Ex. 6). IDOC Defendants contend that Plaintiff never filed the grievance, and thus failed to properly exhaust.

Defendants first argue that Plaintiff could not have written the grievance in September 2016 because the grievances include references to winter and spring weather. [131] at 3. This argument fails to persuade.

True, the grievance includes, among other complaints, statements that the "windows are sealed shut and this makes the cell house extra hot in the spring and summer." (D Ex. 6). It also states that "a lot of windows are broken out and in the wintertime the cold air is blowing through the cell house making it extremely cold." *Id*. Plaintiff, however, testified that although he arrived in F House in August 2016, he had resided in F house five or six times previously, and thus used his prior experiences of winter and spring stays in F House to create a general picture of the living conditions in his grievance. This testimony credibly rebuts Defendants' argument that Plaintiff did not file this grievance in September 2016, or on any other date.

Second, Defendants argue that the lack of notation or log entry of this grievance undermines Plaintiff's assertion that he did, in fact, file it. This Court does not find the lack of a notation or log entry for the September 2, 2016 grievance dispositive in this case. Plaintiff testified that he mailed the emergency grievance

7

directly to the Warden on September 2, 2016, as permitted by the regulations, 20 Ill. Admin. Code § 504.840, but never received a response. He introduced into evidence follow-up letters about this grievance, which he wrote to the Warden and IDOC Director on September 6 and 25th, respectively, to support this testimony. (P. Ex. B2 at 3–5).

Moreover, Stateville Grievance Officer Anna McBee testified that emergency grievances go straight to the Warden, and only then does the Warden's office send the grievance to the grievance office for logging. *See also* 20 Ill. Admin. Code § 504.840. Defendants offered no evidence of the Warden's mail receipt system. Thus, they provide no basis for this Court to infer that the Warden did not, in fact, receive the grievance. Rather, based upon the evidence adduced at the hearing, Defendants failed to rebut the reasonable inference that plaintiff did submit the grievance to the Warden, and the Warden, for reasons unknown, did not provide the grievance to the grievance office for logging.

Finally, to the extent IDOC Defendants maintain that Plaintiff failed to properly appeal his *non-response* to the ARB, this argument finds no basis in the Illinois regulations. [131] at 3–4; *see, e.g.*, *Meyer v. Wexford Health Sources*, No. 3:16-cv-173-JPG-DGW, 2017 WL 1058831, at *4 (S.D. Ill. Feb. 16, 2017) ("As the Illinois Administrative Code does not provide guidance on how to exhaust grievances for which no response is received, the Court finds that Plaintiff was thwarted in his attempts to exhaust his . . . grievances."); *see also Moore*, 515 Fed. Appx. at 598 ("We take a strict compliance approach to exhaustion, but an inmate needs to exhaust only

8

*available* administrative remedies. If [Plaintiff] is correct that the prison failed to respond to his grievances, an appeal to the Board was an unavailable remedy and need not have been exhausted.") (citing *Dole*, 438 F.3d at 809) (internal citations omitted).

Thus, based upon the totality of the evidence presented at the hearing, this Court finds that Plaintiff has exhausted his unconstitutional conditions of confinement claim, to the extent it includes allegations related to the September 2, 2016 grievance.

**C.  September 16, 2016 Grievance**

Plaintiff's September 16, 2016 grievance relates to the medical care he received following his injury on a piece of broken workout equipment, and thus implicates only Wexford Defendants and Plaintiff's deliberate indifference claim. (D. Ex. 5 at 5−6). The parties concede that procedurally, Plaintiff properly grieved this complaint, as the ARB denied it on its merits on May 9, 2017. (P. Ex. C2).

Wexford Defendants argue that Plaintiff's grievance fails to offer details sufficient to provide them with proper notice of his complaints, and thus that he failed to exhaust. *See generally* [132]. According to the Seventh Circuit, "grievances are intended to give prison administrators an opportunity to address a shortcoming, not to put individual defendants on notice of a lawsuit." *Glick v. Walker*, 385 Fed. Appx. 579, 582 (7th Cir. 2010). Accordingly, a grievance must provide "prison officials a fair opportunity to address [a plaintiff's] complaint." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2013). IDOC regulations require that grievances contain factual details

9

regarding "each aspect of the inmate's complaint, including what happened, when, where, and the name of each person who is the subject of the complaint." *Winfrey v. Walker*, 3:09-cv-00461-JPG-PMF, 2011 WL 2199721, at *2 (S.D. Ill. May 2, 2011) (citing 20 Ill. Admin. Code § 504.810(b)). This Court analyzes Plaintiff's grievance with respect to each Wexford Defendant included in his deliberate indifference claim.

As to Dr. Aguinaldo, Plaintiff grieved that he saw Dr. Aguinaldo for appointments on August 20, 22, and 26, 2016. (D. Ex. 5 at 6). The grievance states that on August 20, Dr. Aguinaldo looked at his eyes and ears, and then rescheduled Plaintiff because his "file was misplaced." *Id*. On August 22, Dr. Aguinaldo looked over Plaintiff's X-rays, and in response to Plaintiff's recitation of his ongoing problems, Dr. Aguinaldo told him it "takes time to get better" and declined to give him stronger pain medication. *Id*. At this visit, Plaintiff asked if he had suffered a concussion, and Dr. Aguinaldo responded that "he did not think so." *Id*. On August 26, Plaintiff saw Dr. Aguinaldo for the third time; Plaintiff again stated that he needed stronger medication, and Dr. Aguinaldo said that he would order some. *Id*. Plaintiff's grievance states that he received this medication on September 8, 2016. *Id*.

Based upon these grievance statements, this Court finds that Plaintiff exhausted his administrative remedies with respect to Dr. Aguinaldo by providing him with a fair opportunity to address his complaint. *Maddox*, 655 F.3d at 722. The SAC alleges that Plaintiff "eventually" saw Dr. Aguinaldo following his injury, and once Plaintiff met with Dr. Aguinaldo, he failed to check Plaintiff for a concussion

10

and treated him "as if he was lying." [57] ¶¶ 23−24, 34. Accordingly, this grievance properly put Dr. Aguinaldo on notice of Plaintiff's complaints and made it possible to discern the exact medical decisions Plaintiff's SAC alleges constituted deliberately indifferent medical care.

With respect to Dr. Obaisi, the September 16, 2016 grievance states that Plaintiff had an appointment to see Dr. Obaisi on September 14, 2016, but Dr. Obaisi could not see him that day due to an unrelated deposition. (D. Ex. 5 at 6). The grievance also states that Plaintiff had an appointment to see Dr. Obaisi on September 15, 2016, but did not see Dr. Obaisi on that date for undisclosed reasons. *Id*. The SAC, however, alleges that Plaintiff did not see Dr. Obaisi prior to filing this grievance due to "overcrowding" and "understaffing." [57] ¶ 40. Moreover, Plaintiff's grievance fails to state that Dr. Obaisi personally declined to treat Plaintiff or had any personal involvement in his treatment whatsoever. *See, e.g., Palmer v. Fenoglio*, 2012 WL 1466511, at *4 (S.D. Ill. Apr. 27, 2012) (finding plaintiff failed to exhaust for deliberate indifference claim against individual doctor where grievance offered: (1) "no indication that [doctor] had been asked to see or treat [plaintiff] and had declined"; and (2) "no indication [doctor] had seen [plaintiff] and mistreated him."). As such, Plaintiff's September 16, 2016 grievance fails to exhaust his deliberate indifference claim, to the extent it involves Dr. Obaisi.

Finally, with respect to Wexford Health Sources, Inc. (Wexford), Plaintiff's SAC alleges that in an effort to save costs: (1) Wexford deliberately understaffed physicians at Stateville, [57] ¶ 30; and (2) an unnamed nurse denied him an MRI, *id*.

11

¶ 28. Based upon these allegations, Plaintiff asserts that Wexford deliberately denied him medical care. *Id*. ¶¶ 22−41. Plaintiff's grievance contains no information regarding any denied request for an MRI or understaffing; rather, Plaintiff's grievance suggests, at most, that he had trouble scheduling an appointment with Dr. Obaisi. (D. Ex. 5 at 5−6). Absent additional details in the grievance, these statements cannot put Wexford on notice of Plaintiff's allegations that Wexford engaged in a deliberate scheme to cut costs and thus deny Plaintiff medical care, much less provide them an opportunity to correct the problem. *See, e.g.*, *Burt v. Berner*, No. 13-CV-794-NJR-DGW, 2015 WL 1740044, at *6 (S.D. Ill. Apr. 14, 2015) ("Merely stating that 'the staff is deliberately and blatantly denying me my medication,' did not give sufficient notice to prison officials that [plaintiff] was contending correctional officers and medical staff at Menard were working together with Stateville staff members to achieve the express goal of denying him medical care."). As such, this Court finds that Plaintiff's September 16, 2016 grievance fails to exhaust his deliberate indifference claim, to the extent it includes Defendant Wexford.

As stated above, Plaintiff's deliberate indifference claim can proceed only to the extent it includes allegations about Dr. Aguinaldo. But because Plaintiff's September 16, 2016 grievances fails to exhaust this claim as to Dr. Obaisi and Wexford, his deliberate indifference claim will not proceed as to those two Defendants.

**D.      October 7, 2016 Grievance**

Plaintiff's October 7, 2016 grievance concerns alleged damage to his property

12

box, such as mice eating the food contained inside the box. (D. Ex. 4). This grievance relates only to Plaintiff's unconstitutional conditions of confinement claim, and thus does not implicate the Wexford Defendants.

Plaintiff testified that he first sent this grievance to his counselor, as provided by the Illinois regulations, and mailed it to his grievance officer once he received a response from his counselor. Plaintiff then testified that he never received a response from the grievance officer. According to Plaintiff, in January or February of 2017, he sent the grievance to the ARB to inform them that he did not receive a response from the grievance officer at Stateville, but never heard back from the ARB. Plaintiff testified that he thought his response may have been lost in the mail given that he transferred from Stateville to Menard Correctional Center in the interim.[3] Unlike his August 6, 2016 and September 2, 2016 grievances, Plaintiff presented no physical evidence of these follow-up communications.

IDOC Defendants argue that Plaintiff failed to exhaust this grievance based upon the face of the exhibit itself. [131] at 4−5. Plaintiff submitted into evidence his own copy of the October 7, 2016 grievance. (P. Ex. D1). Both Plaintiff and IDOC Defendants' exhibits contain the same distinct, written marking: "4450". McBee testified that this number signals the corresponding number in the grievance office's log. *Compare id. with* (D. Ex. 4). Because Plaintiff's copy of the grievance contained numerical markings written by the grievance office, IDOC Defendants argue that he clearly received the grievance back, and thus failed to exhaust by not sending it to

---

[3] Prior to the presentation of evidence at the hearing, the parties stipulated that Plaintiff moved from Stateville to Menard on November 18, 2016.

the ARB for appeal. [131] at 5. This Court agrees.

Given that Plaintiff proffered a form with distinct grievance office markings, the evidence demonstrates, by a preponderance of the evidence, that Plaintiff received the form back from his grievance officer. Moreover, Plaintiff failed to provide any credible explanation of this discrepancy at the parties' hearing. Given the absence of any evidence that Plaintiff appealed this grievance to the ARB, this Court finds that IDOC Defendants have proved, by the preponderance of the evidence, Plaintiff's failure to exhaust with respect to the October 7, 2016 grievance. *Dole*, 438 F.3d at 806–07; *see also Jackson v. Hoffman*, No. 12-cv-0233-MJR-SCW, 2013 WL 5367977, at *3 (S.D. Ill. Sept. 25, 2013) ("But the state is not required to prove a negative, only to carry its burden of showing, by a preponderance of the evidence, that Plaintiff did not exhaust.") (citing *Ray v. Clements*, 700 F.3d 993, 1010 (7th Cir. 2012)). And because this Court finds Plaintiff's failure to exhaust intentional, this Court does not afford Plaintiff an opportunity to go back and exhaust—nor could Plaintiff do so given the 30-day ARB appeal deadline. *See Pavey*, 544 F.3d at 742 (holding that if the judge determines that the prisoner did not exhaust his administrative remedies, the judge must then determine "whether . . . the failure to exhaust was the prisoner's fault," in which the claim cannot survive).

### III. Conclusion

For the reasons explained above, this Court finds that Plaintiff has properly exhausted his administrative remedies as to those parts of his unconstitutional conditions of confinement claim based upon the August 6, 2016 and September 2,

14

2016 grievances. To the extent this claim is based upon these two grievances, it will proceed on its merits. *See id.* at 742 ("If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to . . . a trial, on the merits."). To the extent Plaintiff's unconstitutional conditions of confinement relies upon the October 7, 2016 grievance, it cannot proceed to the merits, and is dismissed without prejudice. *Id.*; *see also Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018) (affirming district court's dismissal, without prejudice, for failure to exhaust, but noting that such a dismissal became "final for purposes of appellate review" because plaintiff was time-barred by prison's grievance policy). Plaintiff's deliberate indifference claim may proceed on the merits only with respect to Dr. Aguinaldo. This Court dismisses Wexford and Dr. Obaisi for failure to exhaust.

This Court sets a status hearing for March 10, 2020, at 9:45 a.m. in Courtroom 1203, at which time the parties shall be prepared to set case management dates, including a trial date, for the remainder of the case.

Dated: February 14, 2020

ENTERED:

John Robert Blakey
United States District Judge